# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF OKLAHOMA

FILED
NOV 09 2026
BONNIE HACKLER
Clerk, U.S. District Court
By_______________
Deputy Clerk

| | | |
|---|---|---|
| MCELROY PROPERTIES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>STATE FARM FIRE AND CASUALTY COMPANY; SHARI BIVINS; and JENNIFER LOWDER INSURANCE AGENCY, INC.,<br><br>Defendants. | ) | 26-cv-00234-JAR |

**OPINION AND ORDER**

A strong defense does not create federal jurisdiction. State Farm may ultimately establish that McElroy Properties, LLC cannot recover against its insurance agent or agency. But the question before this Court is narrower: whether State Farm has demonstrated that there is no reasonable basis for recovery under Oklahoma law. The strength of a defense and the existence of jurisdiction are different questions. This Court must answer the jurisdictional question first.

Before the Court is Plaintiff's Motion to Remand. (Dkt. No. 19). State Farm Fire and Casualty Company filed a response in opposition, and McElroy filed a reply. (Dkt. Nos. 21, 22). State Farm contends that Shari Bivins and Jennifer Lowder Insurance Agency, Inc. were fraudulently joined and that their citizenship should be disregarded. Alternatively, it requests jurisdictional discovery. State Farm has not carried its burden. The motion to remand is **GRANTED**.

## I. Factual and Procedural Background

McElroy's insured property is located at 421 West 10th Street in Ada, Oklahoma. The amended petition alleges that State Farm issued a property insurance policy that was in effect when a March 4, 2025 windstorm damaged the property. A tree was blown onto the property, causing damage to the roof, walls, structural support, other structures, and fence. (Dkt. No. 2-5 at 2, ¶¶ 5–6, 11–13). McElroy also alleges that State Farm, the agency, or Bivins represented that the property met State Farm's underwriting requirements for the coverage bound. (Id. ¶ 9).

McElroy submitted a claim, and State Farm inspected the property on March 12, 2025. (Id. at 2–3, ¶¶ 14–17). According to McElroy, State Farm's estimate did not account for all covered damage. McElroy incurred expenses to remove storm debris and repair the property that State Farm should have paid. (Id. at 3, ¶¶ 23–26). McElroy further alleges that State Farm failed to identify all damage, unreasonably investigated and evaluated the claim, and delayed payment. (Id. at 4–5, ¶¶ 31–38).

McElroy commenced this action in the District Court of Pontotoc County, Oklahoma, on March 3, 2026, and filed its amended petition on April 7, 2026. (Dkt. No. 21 at 8; Dkt. No. 2-5 at 1). Counts I and II assert breach of contract and breach of the duty of good faith and fair dealing against State Farm. Count III asserts "negligence and deceit" against Bivins and the agency. (Dkt. No. 2-5 at 3–6, ¶¶ 19–53).

Count III incorporates paragraphs 1 through 42 and alleges that State Farm implemented a "Hail Claim Focus Initiative," described as a predetermined, outcome based practice designed to reduce payments on valid claims, specifically claims involving total roof replacements. (Id. at 5–6, ¶¶ 43–46). McElroy alleges that the practice was well known among State Farm agents and adjusters, that Bivins and the agency knew or should have known of it, and that it was not disclosed at annual renewal. (Id. at 6, ¶¶ 47, 49–50).

The amended petition separately alleges suppression of information "known to" Bivins and the agency. It further alleges that they advised McElroy that its roof would be covered for wind or hail loss while misleading it by failing to disclose the Initiative. McElroy alleges reliance on the agent and agency in procuring insurance and seeks damages from their alleged deceit. (Id. ¶¶ 48, 51–53). These are allegations, not findings. The Court recounts them to identify the asserted basis for joinder without deciding their truth.

State Farm removed the action on July 6, 2026. (Dkt. No. 2). It identifies McElroy as an Oklahoma citizen and State Farm as an Illinois citizen, acknowledges that Bivins and the agency are Oklahoma citizens, and asserts an amount in controversy exceeding $75,000. (Id. at 4–5 & nn.3–4). The jurisdictional dispute concerns whether the agent defendants' citizenship may be disregarded.

State Farm identifies the agency's correct corporate name as Jennifer Lowder Insurance Agcy, Inc., rather than Jennifer Lowder Insurance Agency, Inc. (Dkt. No. 21 at 7 n.1). That spelling issue does not resolve fraudulent joinder. Even if the

agency's status required further clarification, Bivins's proper joinder would independently defeat complete diversity.

## II. Governing Standard

Federal courts possess limited jurisdiction. The party invoking federal jurisdiction bears the burden of establishing it. *Becker v. Ute Indian Tribe of the Uintah & Ouray Reservation*, 770 F.3d 944, 946–47 (10th Cir. 2014). Diversity jurisdiction requires an amount in controversy exceeding $75,000 and complete diversity of citizenship. 28 U.S.C. § 1332(a); *Middleton v. Stephenson*, 749 F.3d 1197, 1200 (10th Cir. 2014).

Fraudulent joinder permits a court to disregard a nondiverse defendant when the removing party establishes either actual fraud in pleading jurisdictional facts or the plaintiff's inability to establish a cause of action against that defendant in state court. *Dutcher v. Matheson*, 733 F.3d 980, 988 (10th Cir. 2013). The removing party bears a heavy burden. Factual disputes and uncertainties in controlling law must be resolved in the plaintiff's favor. *Id.*

That inquiry is more demanding than the standard governing a motion to dismiss under Rule 12(b)(6). *Montano v. Allstate Indem.*, No. 99-2225, 2000 WL 525592, at *2 (10th Cir. Apr. 14, 2000). If there is a reasonable basis to believe the plaintiff might succeed on at least one claim against a nondiverse defendant, remand is required. The claim need not be certain to succeed, but it must have a basis in the

alleged facts and applicable law. *Nerad v. AstraZeneca Pharms., Inc.*, 203 F. App'x 911, 913 (10th Cir. 2006).

The Court may pierce the pleadings and examine the record to determine the basis for joinder. *Dodd v. Fawcett Publ'ns, Inc.*, 329 F.2d 82, 85 (10th Cir. 1964). That authority does not permit a preliminary trial of doubtful factual issues. The asserted nonliability must be capable of summary determination and established with complete certainty upon undisputed evidence. *Smoot v. Chi., Rock Island & Pac. R.R. Co.*, 378 F.2d 879, 882 (10th Cir. 1967). The standard is demanding, but it does not make every allegation sufficient. The Court must identify a reasonable factual and legal basis for potential recovery without deciding the merits first.

## III. Fraudulent Joinder

### A. The Alleged Duty Arises from Representations and Omissions

State Farm does not identify actual fraud in the pleading of citizenship or other jurisdictional facts. Its argument concerns McElroy's ability to recover against Bivins and the agency. (Dkt. No. 21 at 11–22). The Court therefore proceeds under the second *Dutcher* prong.

Oklahoma recognizes an insurance agent's duty to act in good faith and exercise reasonable care, skill, and diligence in procuring insurance. *Swickey v. Silvey Cos.*, 979 P.2d 266, 269 (Okla. Civ. App. 1999). That duty does not make an agent a guarantor of every claim decision. Nor does an agent's sale of insurance,

without more, create a general fiduciary duty. *Id.*; *Cosper v. Farmers Ins. Co.*, 309 P.3d 147, 150 (Okla. Civ. App. 2013).

But the absence of a general fiduciary duty does not eliminate duties arising from an agent's own statements and omissions. Constructive fraud may arise when a breach of a legal or equitable duty produces an advantage by misleading another to that person's prejudice. Okla. Stat. tit. 15, § 59; *Patel v. OMH Med. Ctr., Inc.*, 987 P.2d 1185, 1199 (Okla. 1999). It does not require intent to deceive and may arise from silence by one who has a duty to speak. *Croslin v. Enerlex, Inc.*, 308 P.3d 1041, 1045–46 (Okla. 2013).

A duty to disclose may arise when a party selectively discloses facts and creates a false impression. A statement may be accurate as far as it goes yet misleading because it omits material information. *Specialty Beverages, L.L.C. v. Pabst Brewing Co.*, 537 F.3d 1165, 1181 (10th Cir. 2008). One who volunteers information capable of influencing another's conduct may become obligated to disclose the whole truth concerning that information. *Uptegraft v. Dome Petrol. Corp.*, 764 P.2d 1350, 1353–54 (Okla. 1988).

McElroy invokes that basis for potential liability. Paragraph 52 alleges an express coverage representation directed to McElroy's roof. Paragraphs 50 and 51 allege nondisclosure at annual renewal and suppression of information actually known to the agent and agency about an existing practice directed at reducing payments on covered claims. Paragraph 48 alleges reliance. Paragraph 53 seeks damages from the alleged deceit. (Dkt. No. 2-5 at 6).

The alleged duty therefore does not arise solely from the defendants' status as insurance agents. It arises from what they allegedly chose to say while withholding material information allegedly known to them. State Farm's arguments against imposing a general duty to advise about insurance needs or guarantee future claim decisions do not conclusively answer that separate theory. (Dkt. No. 21 at 15–16, 20–22). Because a reasonable basis for recovery on one claim is sufficient, the Court need not determine whether every theory suggested by the label "negligence and deceit" would independently survive a merits challenge.

**B. Causation and the Wind Loss**

State Farm's principal argument concerns causation. It contends that McElroy's loss arises exclusively from State Farm's investigation and failure to pay for debris removal and repairs. It emphasizes that the amended petition does not expressly allege that State Farm applied the Initiative to McElroy's claim. (Dkt. No. 21 at 12–14, 23–24).

The latter observation is correct. The Court will not attribute to the amended petition an express allegation it does not contain. Nor will it import the more detailed account in McElroy's briefs into the pleading. The question is whether the allegations actually pleaded, considered together, provide a reasonable basis for potential recovery against Bivins.

Paragraph 43 incorporates paragraphs 1 through 42 into Count III. (Dkt. No. 2-5 at 5). Those incorporated allegations identify wind damage to the roof and other

portions of the property, an allegedly deficient inspection and evaluation, and McElroy's payment of expenses that allegedly should have been covered. (Id. at 2–5, ¶¶ 11–13, 23–28, 31–37). Count III then alleges an existing practice directed at reducing payments on valid claims, specifically total roof replacements, together with a coverage representation, knowledge, suppression, reliance, and a demand for damages from deceit. (Id. at 6, ¶¶ 44–53).

Incorporation alone does not establish causation, and an unpaid insurance claim does not automatically establish agent liability. Here, however, the allegations concern the same insurance relationship, an express representation about roof coverage, a practice allegedly directed at reducing roof replacement payments, and an allegedly underpaid storm loss that includes roof damage. The Court reads Count III as asserting that the alleged suppression of material information concerning the insurance McElroy procured contributed to the injury described in the incorporated allegations. That connection is reasonably inferable from the pleading itself, even though it is imperfectly expressed.

The nature of this loss warrants separate attention. McElroy alleges wind damage and a fallen tree, not a hail event. (Id. at 2, ¶¶ 11–13). The title "Hail Claim Focus Initiative" does not, by itself, resolve the scope of the practice alleged. Paragraph 44 describes a plan to reduce payments on valid claims, paragraph 46 identifies total roof replacements, and paragraph 52 expressly addresses representations about wind or hail coverage. Read together, those allegations provide a reasonable basis to connect the asserted nondisclosure theory to the pleaded wind

loss. They do not establish that the Initiative actually governed that loss. That remains a matter for proof.

The Court also does not hold that Bivins or the agency is responsible for every expense arising from the fallen tree or that every item of damage is attributable to the alleged Initiative. The possibility of recovery for a roof related injury does not depend on establishing at this stage that every claimed expense shares the same cause. The extent of any recoverable damages remains unresolved.

State Farm's competing interpretation is that this is solely an adjustment dispute for which the agent defendants bear no responsibility. That interpretation may ultimately prevail. But State Farm has not established it with the certainty required to disregard Bivins's citizenship. The distinction is between a causal connection that requires proof and one that has no reasonable basis. On this record, State Farm has demonstrated the former, not the latter.

## C. The Remaining Challenges Do Not Establish Fraudulent Joinder

State Farm argues that McElroy received the policy it requested and that the written coverage was sufficient for the claimed loss. (Dkt. No. 21 at 18, 21–22). Those circumstances may defeat a claim resting solely on failure to procure the requested policy. They do not conclusively resolve whether an otherwise accurate coverage statement became misleading through suppression of material information. *Specialty Beverages*, 537 F.3d at 1181. The Court neither treats the alleged Initiative as

changing the policy's written terms nor equates coverage with a promise to pay every claim in the amount requested.

State Farm also invokes the insured's duty to read the policy. (Dkt. No. 21 at 15). See *Liverpool & L. & G. Ins. Co. v. T.M. Richardson Lumber Co.*, 69 P. 936, 937 (Okla. Terr. 1902). But the information allegedly withheld concerns an internal practice, not a limitation McElroy could necessarily discover by reading the policy. The asserted duty to read does not conclusively defeat reliance on the nondisclosure theory pleaded here.

State Farm's arguments concerning opinion and future performance encounter the same distinction. (Dkt. No. 21 at 17–19). See *Cupit v. Dancu Chem. Co.*, 316 P.2d 593, 596 (Okla. 1957); *Citation Co. Realtors, Inc. v. Lyon*, 610 P.2d 788, 790 (Okla. 1980). The potential claim concerns suppression of an existing practice allegedly known to the speaker, not merely an inaccurate prediction about an unknown future claim. Likewise, the fact that the policy preceded the alleged practice does not resolve allegations of nondisclosure during subsequent annual renewals. (Dkt. No. 2 at 1–2; Dkt. No. 22 at 1; Dkt. No. 2-5 at 6, ¶¶ 50–52).

The Court agrees that State Farm's claims handling duties are distinct from the duties of its agents. See *Trinity Baptist Church v. Bhd. Mut. Ins. Servs., LLC*, 341 P.3d 75, 86 (Okla. 2014); *Timmons v. Royal Globe Ins. Co.*, 653 P.2d 907, 912–13 (Okla. 1982). The potential claim does not transfer State Farm's duty of good faith and fair dealing to Bivins. It concerns her own alleged representations and omissions in the insurance relationship.

State Farm challenges what the agent defendants "should have known" and the absence of details identifying when and how they acquired knowledge. (Dkt. No. 21 at 19–21). But paragraph 49 alleges that they "knew or should have known," and paragraph 51 separately alleges suppression of information "known to them." (Dkt. No. 2-5 at 6). The alternative allegation does not erase the assertion of actual knowledge. State Farm's payment of an earlier claim, even accepting its description, does not conclusively establish what Bivins knew or how this later claim was handled. (Dkt. No. 21 at 17, 25).

McElroy also submits material concerning other State Farm personnel. (Dkt. No. 19 at 13–19). That material is not proof that Bivins personally knew of the alleged practice. The Court does not rest its decision on imputing one person's knowledge to another. It rests on the allegations directed to Bivins and State Farm's failure to establish that the potential claim lacks a reasonable factual and legal basis.

State Farm's Rule 9(b) objection likewise does not establish fraudulent joinder. (Dkt. No. 21 at 13 n.2). The Court does not decide that every allegation satisfies every applicable pleading requirement. The inquiry remains more demanding than a merits determination under Rule 12(b)(6). *Montano*, 2000 WL 525592, at *2. In *Nerad*, the Tenth Circuit characterized an inquiry considering potentially curable Rule 9(b) deficiencies as jurisdictional while holding that the resulting remand order was unreviewable. 203 F. App'x at 913–14. That decision does not resolve the sufficiency of this pleading, but it underscores the distinction between the jurisdictional inquiry and a determination on the merits.

### D. The Competing Decisions

The parties cite decisions reaching different results in disputes involving State Farm agents. Those decisions warrant consideration. Jurisdiction is not determined by counting outcomes.

This Court recently addressed substantially similar arguments in *Ignite Fitness, LLC v. State Farm Fire & Casualty Co.*, No. 26-cv-00236-JAR, Dkt. No. 21 at 7–10 (E.D. Okla. Nov. 4, 2026). There, an express coverage representation, coupled with alleged suppression of a known claims practice, supplied a reasonable basis for potential recovery against the nondiverse agent. The absence of an express allegation that the Initiative was applied to the particular claim did not establish fraudulent joinder when the pleaded allegations, considered together, reasonably connected the agent's conduct to the claimed injury. The same reasoning applies here, subject to the separate consideration of McElroy's wind loss and fallen tree discussed above.

In *Lawson v. State Farm Fire & Casualty Co.*, No. CIV-25-168-RAW-JAR, 2025 WL 3492817, at *3 (E.D. Okla. Dec. 5, 2025), this Court applied the demanding fraudulent joinder standard to claims arising from the alleged Initiative. State Farm identifies differences between the allegations in this case and those in Lawson, principally the absence here of an express allegation that the Initiative was applied to the particular claim. (Dkt. No. 21 at 23–24). Those differences require examination of McElroy's own pleading. They do not change the governing standard. The Court has addressed the omitted allegation and the reasonable connection among the allegations actually made.

State Farm's contrary authorities include *Layer v. State Farm Fire & Casualty Co.*, No. 25-CV-401-JDR-MTS, 2026 WL 265805, at *4 (N.D. Okla. Feb. 2, 2026), and *Lewis v. State Farm Fire & Casualty Co.*, No. 25-CV-0274-CVE-MTS, 2026 WL 179888, at *4–5 (N.D. Okla. Jan. 22, 2026). The Court agrees that issuing the requested policy does not guarantee payment of every disputed claim and that an insurer's alleged breach does not automatically establish agent liability.

In *Taber v. State Farm Fire & Casualty Co.*, No. CIV-25-00816-JD, slip op. at 22–25 (W.D. Okla. Apr. 6, 2026), the court rejected alleged duties arising from inherent coverage representations and found insufficient connections between the agents' conduct and the claimed losses. (Dkt. No. 21-1 at 22–25). Here, paragraph 52 alleges an express representation, and paragraphs 50 and 51 allege annual renewal nondisclosure and suppression of known information. The potential claim does not rest solely on a representation inferred from issuance of a policy.

The Court recognizes that *Lewis* also considered express coverage assurances and allegations of a broader claims denial scheme. 2026 WL 179888, at *1–2, *4–5. The disagreement is therefore one of reasoning, not merely pleading detail. This Court respectfully declines to follow *Lewis* insofar as it treats receipt of the requested coverage and the insurer's responsibility for adjustment as dispositive of the separate nondisclosure theory. McElroy's allegations provide a reasonable connection among the alleged coverage representation, suppression of a known claims practice, reliance, and injury. Whether that connection can be proved remains a merits question. State

Farm has not established that it lacks a reasonable factual and legal basis under *Dutcher* and *Nerad*.

## IV. Jurisdictional Discovery and Remaining Procedural Issues

State Farm alternatively seeks discovery concerning what Bivins and the agency knew, when and how they learned it, and whether the alleged Initiative affected McElroy's claim. (Dkt. No. 21 at 25–26). Jurisdictional discovery is not categorically unavailable in a fraudulent joinder dispute. But this request seeks development of the central disputed elements of the underlying claim. State Farm has not identified a discrete factual issue that would permit Bivins's asserted nonliability to be established through the summary determination contemplated by Dodd and Smoot. On this record, additional jurisdictional discovery is not warranted. The request is DENIED.

The parties also dispute whether removal was timely. (Dkt. No. 21 at 9–10; Dkt. No. 22 at 3–4). Because Bivins's citizenship cannot be disregarded and complete diversity is lacking, resolution of that procedural issue would not alter the disposition. The Court does not reach it.

McElroy requests leave in its reply to amend if the Court considers the alleged connection to the Initiative insufficiently pleaded. (Dkt. No. 22 at 7). The Court's conclusion rests on the existing amended petition. No further amendment is necessary to resolve the remand motion, and the Court does not reach that conditional request.

## V. Attorney's Fees and Costs

McElroy seeks attorney's fees and costs under 28 U.S.C. § 1447(c), emphasizing State Farm's continued removal of similar cases after prior remand decisions. (Dkt. No. 19 at 32–33). An unsuccessful removal does not automatically justify an award. Absent unusual circumstances, courts may award attorney's fees only when the removing party lacked an objectively reasonable basis for removal. *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

State Farm relied on contrary decisions addressing related theories of agent liability and identified differences between McElroy's pleading and those in previously remanded cases. (Dkt. No. 21 at 14–18, 23–25). Those arguments do not satisfy its heavy jurisdictional burden, but they provide an objectively reasonable basis for removal. The Court's disagreement with their reasoning does not make them objectively unreasonable. McElroy's request for attorney's fees and costs is DENIED.

## VI. Conclusion

McElroy has not established that Bivins or the agency is liable. It was not required to do so. State Farm was required to establish that there is no reasonable basis to believe McElroy might recover against a nondiverse defendant under Oklahoma law. It has not met that burden.

The amended petition alleges an express roof coverage representation, knowledge of an existing practice directed at reducing payments on covered claims, suppression, reliance, and injury. It connects those allegations to a wind loss that

damaged the roof and allegedly left McElroy paying covered expenses. The connection requires proof. It does not require this Court to decide the merits before determining whether it has the power to do so.

Accordingly, Plaintiff's Motion to Remand (Dkt. No. 19) is **GRANTED**. This action is **REMANDED** to the District Court of Pontotoc County, Oklahoma. State Farm's alternative request for jurisdictional discovery is **DENIED**. Plaintiff's request for attorney's fees and costs under 28 U.S.C. § 1447(c) is **DENIED**.

**IT IS SO ORDERED** this 9th day of November, 2026.

Jason A. Robertson
UNITED STATES MAGISTRATE JUDGE